IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No.   23 CR 585 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| LAWRENCE JACKSON ) | |

## **MEMORANDUM OPINION AND ORDER**

On November 1, 2023, a grand jury indicted defendant with one count of perjury in violation of 18 U.S.C. § 1623(a) (Count One), and one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(2) of the Sarbanes-Oxley Act of 2002 (Count Two), based on statements that defendant made during a civil deposition in <u>Tri-State Disposal, Inc., v. The Village of Riverdale and Lawrence Jackson</u>, 18 C 2138 (N.D. Ill., J. Ellis) (the "<u>Tri-State</u> lawsuit"). Defendant moved to dismiss Count Two for failure to state an offense under Fed. R. Crim. P. 12(b)(3)(B)(v), arguing that, in light of the Supreme Court's decision in <u>Fischer v. United States</u>, 603 U.S. 480 (2024), the indictment fails to plead what he says is a necessary element of a section 1512(c) violation—that defendant's statements "altered, destroyed, influenced, impeded or falsely created any evidence for use in an official proceeding."

After defendant filed his motion, the grand jury returned a superseding indictment on June 30, 2025, which added to the same Count One and Count Two, one count of filing a false tax return in violation of 26 U.S.C. § 7206(1), and three counts of failure to file taxes in violation of 26 U.S.C. § 7203.   The parties agree that defendant's motion to dismiss applies with equal force to the superseding indictment.   The court agrees and will thus treat defendant's motion to dismiss as a motion to dismiss Count Two of the superseding indictment.   For the following reasons, the court denies defendant's motion to dismiss Count Two.

## BACKGROUND

### Factual Background

"When considering a motion to dismiss an indictment, a court assumes all facts in the indictment are true and must 'view all facts in the light most favorable to the government.'" United States v. Jones & Schimenti, 383 F. Supp. 3d 810, 814 (N.D. Ill. Apr. 2019) (quoting United States v. Yashar, 166 F.3d 873, 880 (7th Cir. 1999)). The superseding indictment alleges the following facts.

Individual A was the president and director of Company A-1 (a waste hauling company in Markham, Illinois) and the operator and manager of Company A-2 (a waste transfer company in the Village of Riverdale in Illinois). Defendant was the president of Riverdale. Defendant, along with his wife, owned a trucking company called Centennial Holdings, which was established in March 2018. But Individual A effectively operated Centennial, financing its operations, providing and maintaining its trucks, and helping hire its drivers. Centennial's income, moreover, came from doing work for Individual A's businesses. Those businesses did not pay Centennial directly. Company A-1, for example, instead paid third-party entities, which in turn passed on payment to Centennial. The third parties were used to conceal that the source of payments were from Individual A's businesses to Centennial.

Around September of 2017, Company A-2 applied for a special use zoning permit in Riverdale. One of its competitors, Tri-State Disposal, publicly opposed the issuance of that permit. At the time, Tri-State had a contract with Riverdale to collect garbage that was set to expire in 2019. The contract also provided that Tri-State was to perform additional garbage collection services in the Spring of 2018.

In February 2018, Tri-State filed the Tri-State lawsuit against Riverdale and defendant in Illinois state court. The case was ultimately removed to federal court. Tri-State alleged, among other things, that defendant had caused Riverdale to give preferential treatment to Company A-2.

In March 2018, defendant caused Riverdale to contract with Company B—another waste management company—to do the Spring clean-up that Tri-State was already contracted to do. Two months later, Individual A brokered a meeting between defendant, Individual A, and a representative from Company B, which led to other meetings in 2018 with those three individuals, where defendant and the Company B representative discussed Riverdale contracting with Company B to perform garbage collection services, instead of renewing the Tri-State contract.

Meanwhile, in June 2018, Tri-State amended its complaint in the Tri-State lawsuit after Riverdale made known its decision not to renew Tri-State's contract. The amended complaint alleged that defendant caused Riverdale to give preferential treatment to Company A-2 by unlawfully causing Riverdale to issue a conditional use zoning permit to Company A-2 that allowed Company A-2 to operate on an industrial lot in Riverdale, which posed an environmental hazard. Tri-State further alleged that, after Tri-State spoke out at various public hearings against the zoning permit, defendant retaliated against Tri-State by refusing to renew Riverdale's garbage collection contract with Tri-State.

In November 2018, defendant caused Riverdale to contract with Company B to take over garbage collection services in Riverdale after Tri-State's contract expired in 2019.

In February of 2021, defendant sat for a deposition in the Tri-State lawsuit. The following matters were material to the deposition and the lawsuit:

- Whether defendant had any reason to be favorably biased toward Individual A and his business or to be prejudiced against Tri-State;
- Whether Centennial had any business dealings with Individual A's businesses;
- Whether defendant knew of Centennial's business dealings with Individual A's businesses; and
- Whether defendant was involved with Riverdale's hiring of Company B to do the 2018 spring clean-up.

At his deposition, defendant was placed under oath and advised that his testimony was subject to the penalties of perjury. During the deposition, he provided certain statements that related to seven topics:

1. Whether his wife handled the day-to-day operations of Centennial or had any other involvement in running the business;
2. Whether his accountant handled or had any involvement in the leasing of Centennial's trucks;
3. Whether his wife kept or handled Centennial's internal books and records;
4. Whether Individual B [the Village Administrator for Riverdale] introduced defendant to Company B;
5. Whether Individual B recommended Company B;
6. Whether Individual B made the decision to hire Company B to do the spring clean-up; and
7. Whether defendant was involved in the decision to hire Company B to do the spring clean-up.

**Counts One and Two of the Superseding Indictment**

In Count One of the superseding indictment, the government alleges that defendant, in making statements on the above topics, knowingly made a false material declaration during his testimony in violation of § 1623(a). Section 1623 is titled, "False Declarations Before Grand Jury or Court," and is located under Chapter 79 of Title 18 of the criminal code, which is titled "Perjury."

In Count Two, the government alleges that defendant's statements constituted false

4

testimony in an attempt to obstruct, influence, and impede an official proceeding. According to the government, on the date of his deposition, defendant "did corruptly obstruct, influence and impede an official proceeding, and attempt to do so, namely, the *Tri-State* lawsuit, in that the testimony . . . was false . . . [i]n violation of" § 1512(c)(2). Section 1512 is titled, "Tampering with a Witness, Victim, or an Informant," and is located under Chapter 73 of Title 18 of the criminal code, which is titled "Obstruction of Justice."

## DISCUSSION

### Motions to Dismiss for Failure to State an Offense

Defendant has moved to dismiss Count Two of the superseding indictment under Fed. R. of Crim. P. 12(b)(3)(B)(v). Under Rule 12(b)(3)(B)(v), a defendant in a criminal case may move to dismiss an indictment before trial for "failure to state an offense." Fed. R. Crim. P. 12 (b)(3)(B)(v). The defendant may base such a motion on an assertion that the statute under which he is charged does not apply to his alleged conduct. See United States v. Jones, 993 F.3d 519, 528 (7th Cir. 2021) (citing Rule 12(b)(3)(B)(v), explaining that "an argument that the conduct alleged in an indictment does not state an offense is properly raised before trial"). That is because an indictment must "set forth all the elements necessary to constitute the offense intended to be punished," Handing v. United States, 418 U.S. 87, 117 (1974) (cleaned up), and "must allege that the defendant performed acts which, if proven, constituted a violation of the law that he or she is charged with violating," United States v. Gimbel, 830 F.2d 621, 624 (7th Cir. 1987). "If the acts alleged in the indictment did not constitute a violation of the law that the defendant has been charged with violating," the court should dismiss the indictment. Gimbel,

830 F.2d at 624.

## **Defendant Contends that the Indictment Fails to State an Offense after Fischer**

Defendant argues here that the acts alleged in Count Two of the indictment cannot constitute a violation of § 1512(c)(2), as interpreted by the Supreme Court in Fischer. Section 1512(c)(2) provides:

> Whoever corruptly—
>
> (1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,
>
> shall be fined . . . or imprisoned not more than 20 years, or both.

According to defendant, the Fischer Court "significantly limited the scope of 18 U.S.C. § 1512(c)(2)"—which courts had been treating as a "catchall" for any obstructive conduct—by holding that, "to sustain a charge under § 1512(c)(2)," "'the Government must allege and prove that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so.'" (Quoting Fischer, 603 U.S. at 498). "In so holding," defendant contends, "the Supreme Court explained that subsection (c)(2) was focused on physical evidence or witness testimony which the defendant sought to 'corruptly' 'alter, destroy, influence, or impede' or 'falsely create' with the intent to impair the 'object[']s integrity or availability for use.'" (Quoting unknown source). In other words, defendant asserts, "[u]nder *Fischer*, the Government must allege and prove"—as an "element"—"that a defendant intended to obstruct some piece of evidence," which "may be met where a defendant's testimony concealed another piece of evidence, such as bank records or

6

even another witness that could not be identified without his testimony."

But the indictment here, defendant contends, fails to allege this essential element. The indictment, he presses, "alleges that [defendant] corruptly obstructed, influenced and impeded an official proceeding—the *Tri-State* lawsuit—because he allegedly provided false testimony." But, he argues, the indictment "does not allege that those statements altered, destroyed, influenced, impeded or falsely created any evidence for use in an official proceeding." And after Fischer, "subsection (c)(2) does *not* include conduct that simply involves providing a false statement," such that his "own false statements, without more, do[ ] not satisfy 18 U.S.C. § 1512(c)(2)." (Emphasis by defendant). Because the "indictment does not allege that [his] statements impaired the availability or integrity of other evidence that would be used in the *Tri-State* lawsuit," defendant concludes, "the government fails to allege how [defendant]'s testimony had the impact of 'altering, destroying, manipulating or creating a false document or record.'" (Quoting unknown source).

Nor, he continues, can this deficiency "be cured by way of a superseding indictment or bill of particulars," since "no such evidence exists to support this charge." In particular, defendant contends that "no evidence exists that [defendant]'s testimony about the seven topics set forth in the indictment, even if false, could have impacted any evidence for use in the *Tri-State* lawsuit." According to defendant, the allegedly false testimony relates to "1) the operations of Centennial Holdings; and 2) the genesis of and decision to use Company B for the spring clean-up." But, he argues, the Tri-State lawsuit "focused on a political retaliation claim for Tri-State's criticism of . . . Riverdale's decision not to renew Tri-State's contract and whether Riverdale breached that contract—matters disconnected from [Centennial] and Company B's

7

2018 spring clean-up." Defendant thus concludes that he "could not have foreseen that his testimony, even if false, would obstruct some piece of evidence that may otherwise be available for use in the *Tri-State* proceeding."

The government responds, arguing that "defendant's conduct falls squarely within the confines of 18 U.S.C. § 1512(c)(2) as articulated by the Supreme Court in *Fischer*." According to the government, § 1512(c)(2) "applies to obstructing, influencing, or impeding any official proceeding 'by tampering with *evidence*.'" (Quoting United States v. De Bruhl, 118 F.4th 735, 747 (5th Cir. 2024) (citing Fischer, 603 U.S. at 481) (emphasis in original)). Indeed, the government contends, § (c)(2) "ensures that liability is still imposed for impairing the availability or integrity of *other* things used in an official proceeding beyond the 'record[s], document[s], or other object[s]' enumerated in (c)(1), *such as witness testimony or intangible information*." (Quoting Fischer, 603 U.S. at 481 (emphasis by the government)).

Here, the government asserts, "[d]efendant's false testimony *was* evidence in th[e] [Tri-State] lawsuit." (Emphasis by the government). That is confirmed, the government argues: by Webster's College Dictionary's definition of "testimony" as "evidence in support of a fact or statement"; by Fed. R. Civ. P. 32(a), which states that "a deposition may be used against a party" at a hearing or trial; and by the fact that defendant himself attached his deposition to his summary judgment motion in the Tri-State lawsuit. Thus, the government concludes, the indictment "sufficiently alleges that defendant obstructed an official proceeding" (the Tri-State lawsuit) "with evidence in a federal lawsuit" (his false witness testimony). And contrary to defendant's argument, the government adds, "[n]either the [Fischer] Court nor any subsequent court has imposed a requirement that false witness testimony must be about 'another piece of

evidence.'"

As for defendant's argument that the missing element cannot be cured because there is no evidence to support the charge, the government argues that defendant is wrong. First, the government asserts, "[t]his is a sufficiency of the evidence argument and should be left to the jury." Second, defendant's deposition is again "evidence" in the Tri-State lawsuit and "the topics he lied about" did in fact "relate to the issues" therein. For example, the government argues, "when defendant lied about who was running [Centennial], he did so to conceal his relationship with Individual A," which "was directly relevant to Tri-State's allegation that Tri-State was pushed out because it opposed Individual A's project."

In reply, defendant argues that the government fails to cite any post-Fischer case to support the notion "that a defendant's allegedly false testimony, without more, violates two separate federal statutes (perjury and obstruction) in the exact same way." And contrary to the government's characterization, he contends, his argument here is not that section 1512(c)(2) excludes "witness testimony"; it is "that a defendant's false testimony alone, without causing any alteration, destruction, mutilation, or concealment of other evidence, and without the intent to impair the evidence's availability for use in an official proceeding, does not violate §1512(c)(2)." Here, he asserts, "the Indictment does not allege that [defendant]'s statements had the effect of altering" evidence, "whether tangible or intangible," or that defendant's "answers implicated the availability or integrity of evidence in the civil proceeding." Put simply, he argues, even if his statements were false, they did not affect "other evidence": "The Indictment does not allege the specific statements pled impacted any evidence to be used in the civil proceeding, or even that they were relied upon by a jury or judge." Defendant therefore concludes that the indictment

must be dismissed for failing to allege that defendant "'alter[ed] . . . a record, document, or other object, or attempt[ed] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding,' either by tracking the language of (c)(1) or by providing sufficient facts to ensure the grand jury considered that element." (Quoting § 1512(c)(2)) (Bracketing by defendant).

Finally, while defendant concedes that testimony is evidence, he suggests that after Fischer, a defendant's actions must have the "impact of obstructing *another* witness's testimony, not simply the defendant's own testimony allegedly being untruthful." (Emphasis by defendant). "[F]or an obstruction charge under §1512(c)(2)," his argument goes, "the focus is on the substance of the statement at issue and the impact that statement had on the integrity or use of other evidence that would be used in an official proceeding." But here, he concludes, the government fails to "allege that his testimony negatively impacted the availability or integrity of other evidence," and "his testimony had no impact on the underlying proceedings."

### Count Two States an Offense Even After Fischer

The court finds that the indictment states an offense. Defendant's principal argument here boils down to this: After Fischer, a defendant's having given false testimony at a deposition in a federal civil case cannot constitute a violation of § 1512(c)(2) unless that testimony affects some other piece of evidence in the lawsuit. The court disagrees.

### The Fischer Decision

In Fischer, the Supreme Court interpreted § 1512(c)(2) in the context of a defendant who was being prosecuted for his conduct in the January 6, 2021 insurrection. 602 U.S. at 484. The government alleged that Fischer was part of a crowd that "eventually 'forced entry' into the

[Capitol] building, 'breaking windows,' and 'assaulting members of the U. S. Capitol Police,'" which "caused Members of Congress to evacuate the Chambers and delayed the" process to certify the votes in the 2020 Presidential election. Id. Fischer was indicted on seven counts, including one count for violating § 1512(c)(2). Id. In the district court, he "moved to dismiss that count, arguing that the provision criminalizes only attempts to impair the availability or integrity of evidence." Id. at 484-85. The district court granted the motion, but the D.C. Circuit reversed. Id. at 485. The Supreme Court granted certiorari, id., and ultimately vacated and remanded for further proceedings "in light of [its] interpretation of Section 1512(c)(2)," id. at 498.

As for its interpretation, the Court explained that "[t]o prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used in the proceeding, or attempted to do so." Id. That interpretation stemmed directly from the need for the Court to "[r]esolv[e]" the parties' "dispute": "On the one hand, Fischer contend[ed] that (c)(2) 'applies only to acts that affect the integrity or availability of evidence.' . . . On the other, the Government argue[d] that (c)(2) 'capture[s] all forms of obstructive conduct *beyond* Section 1512(c)(1)'s focus on evidence impairment.'" Id. at 485-86 (citations omitted) (emphasis in original).

In resolving that dispute, the Court explained that (c)(1) "describes particular types of criminal conduct in specific terms" and that, "[t]o ensure the statute would not be read as excluding substantially similar activity not mentioned," (c)(2) contains an "'otherwise' clause" that makes it "also illegal to engage in some broader range of unenumerated conduct." Id. at

11

486. In particular, the Court explained, (c)(1) "consists of many specific examples of prohibited actions undertaken with the intent to impair an object's integrity or availability for use in an official proceeding: altering a record, altering a document, concealing a record, concealing a document, and so on." Id. at 489-90. Subsection (c)(2) then "makes it a crime to impair the availability or integrity of records, documents, or objects used in an official proceeding <u>in ways other than those specified in (c)(1)</u>." Id. at 491 (emphasis added).

As an "example," the Court explained, "it is possible to violate (c)(2) by creating false evidence—rather than altering incriminating evidence." Id. In support, the Court cited then-Judge Sotomayor's opinion in <u>United States v. Reich</u>, 479 F.3d 179 (2d Cir. 2007), as an instance in which there was a "prosecution under subsection (c)(2) for transmitting a forged court order." Fischer, 603 U.S. at 491. The Court further explained that "(c)(2) also ensures that liability is still imposed for impairing the availability or integrity of other things used in an official proceeding beyond the 'record[s], document[s], or other object[s]' enumerated in (c)(1), such as witness testimony or intangible information." Id.

The Court explained that it "ma[d]e[ ] sense to read subsection (c)(2) as limited by (c)(1) in light of the history of the provision." Id. Before the Sarbanes-Oxley Act, the Court noted, section 1512 "failed to impose liability on a person who destroys records himself." Id. at 491-92 (cleaned up). So "prosecutors had to prove that higher-ups at Enron and Arthur Andersen persuaded someone else to shred documents rather than the more obvious theory that someone who shreds documents is liable for doing so." Id. at 492. Congress enacted § 1512(c) to "plug th[at] loophole." Id. The Court noted that it would have been "peculiar" if Congress had "actually hid away in the second part of the third subsection of Section 1512 a catchall provision

12

that reaches far beyond the document shredding and similar scenarios that prompted the legislation in the first place," and that the "better conclusion is that subsection (c)(2) was designed . . . to capture other forms of evidence and other means of impairing its integrity or availability beyond those . . . specified in (c)(1)." Id.

The Court also noted that "[m]uch of th[e] particularized legislation" dealing with specific forms of obstruction in other sections of the criminal code (see generally, 18 U.S.C. ch. 73) and in section 1512 of chapter 73 itself "would be unnecessary if (c)(2) criminalized essentially all obstructive conduct, as the Government contend[ed]." Id. at 492-94. Accepting the government's contention, the Court observed, would, for example, "lump together disparate types of conduct for which Congress had assigned proportionate penalties." Id. at 494. It would, the Court noted, "render[ ] an unnerving amount of statutory text mere surplusage." Id. at 498. At the same time, though, the Court acknowledged that "[i]n a wide-ranging scheme like Chapter 73"—which deals with obstruction—"some provisions will inevitably cover some of the same conduct." Id. at 496.

Finally, the Court explained that "[i]f Congress had wanted to authorize" penalties up to 20-years' imprisonment "for *any* conduct that delays or influences a proceeding in *any* way, it would have said so." Id. at 497 (emphasis in original). The Court thus declined the government's invitation to "transform[ ] this evidence-focused statute into a one-size-fits-all solution to obstruction of justice," and "cabin[ed] [its] reading of subsection (c)(2) in light of the context of subsection (c)(1)." Id. The Court thus concluded that "[t]o prove a violation of Section 1512(c)(2), the Government must establish that the defendant impaired the availability or integrity for use in an official proceeding of records, documents, objects, or . . . other things used

13

in the proceeding, or attempted to do so." Id. at 498.

## Applying Fischer Here

Before the Supreme Court's decision in Fischer, courts had affirmed convictions under § 1512(c)(2) where defendants made false statements, even though those statements did not affect some other piece of evidence. See, e.g., United States v. Jefferson, 751 F.3d 314, 321 (5th Cir. 2014) (giving misleading testimony at a preliminary injunction hearing); United States v. Burge, 711 F.3d 803, 808-10 (7th Cir. 2013) (lying in written responses to civil interrogatory questions), United States v. Carson, 560 F.3d 566, 584 (6th Cir. 2009) (making false statements to a grand jury).

Fischer has not overruled these cases. To be sure, in Fischer, the Court rejected the government's sweeping position there that § 1512(c)(2) "capture[s] all forms of obstructive conduct *beyond* Section 1512(c)(1)'s focus on evidence impairment." Id. at 485 (citations omitted) (underlining added, italics and brackets in original); see also id. at 492 (noting that the government contended that "(c)(2) criminalized essentially all obstructive conduct" (emphasis added)). But the Court did not purport to be tossing out all prior case law addressing § 1512(c)(2)—including the above false-testimony cases.

To the contrary, as explained above, the Fischer Court expressly relied on earlier case law in stating that "it is possible to violate (c)(2) by creating false evidence," citing the Second Circuit's Reich case in which the defendant was prosecuted "under subsection (c)(2) for transmitting a forged court order." 603 U.S. at 491. Although forging a court order involves making a false document, the Fischer Court immediately followed up this example of "creating false evidence" by pointing out that (c)(2) also imposes liability for "impairing the availability or

14

integrity of *other* things used in an official proceeding beyond the 'record[s], document[s], or other object[s]' enumerated in (c)(1), such as witness testimony or intangible information." Id. (emphasis added, italics in original). Reading together these two examples of how (c)(2) broadens (c)(1), then, leads to the conclusion that "it is possible to violate (c)(2) by creating false" "witness testimony." Id.

And indeed, as a practical matter, the court sees no relevant distinction between making a false court order or making a false statement in a deposition. Both are forms of "creating false evidence," id., which the Fischer Court explained was a form of "evidence impairment"—which itself is the "focus" of section 1512(c), id. at 497 (referring to section 1512(c) as an "evidence-focused statute"). Put simply, both are "other forms of evidence and other means of impairing its integrity . . . beyond those . . . specified in (c)(1)" and which "(c)(2) was designed . . . to capture." Id. at 492. The court thus disagrees with defendant that after Fischer, "subsection (c)(2) does *not* include conduct that simply involves providing a false statement," such that his "own false statements" cannot satisfy § 1512(c)(2). (Emphasis by defendant).

Nor does Defendant's surplusage policy argument based on Fischer persuade the court otherwise. Defendant suggests that Fischer counsels against reading (c)(2) broadly enough to cover making false statements without affecting other evidence, because doing so "would largely obviate the need for [the] broad array of other obstruction statutes," (quoting Fischer, 603 U.S. at 492)—including "perjury." In so suggesting, defendant notes the penalty disparity between perjury under section 1623(a) (10-year maximum) and 1512(c)(2) (20-year maximum). But defendant again places more weight on Fischer than the case can bear.

True, the Fischer Court pointed to surplusage in interpreting (c)(2). But again, it did so

15

in the context of rejecting the government's broad reading of (c)(2) as covering all obstruction—regardless of whether it was evidentiary-based. Adopting the government's reading there, the Court observed, would have "render[ed] an unnerving amount of statutory text mere surplusage." Id. at 498. As explained above, though, the Court also recognized that "[i]n a wide-ranging scheme like Chapter 73"—which focuses on "obstruction"—"some provisions will inevitably cover some of the same conduct." Id. And in another recent case, the Supreme Court has explained that "perjury . . . offenses often relate to obstruction of justice," and that "redundancies are common in statutory drafting—sometimes in a congressional effort to be doubly sure, sometimes because of congressional inadvertence or lack of foresight, or sometimes simply because of the shortcomings of human communication." Pugin v. Garland, 599 U.S. 600, 609 (2023) (cleaned up); see also Loughrin v. United States, 573 U.S. 351, 358 n.4 (2014) ("No doubt, the overlap between the two clauses is substantial on our reading, but that is not uncommon in criminal statutes"); Hubbard v. United States, 514 U.S. 695, 714 n.14 (1995) ("Congress may, and often does, enact separate criminal statutes that may, in practice, cover some of the same conduct."). The court is therefore not persuaded that it must read (c)(2) to exclude defendant's alleged conduct here merely because both perjury and obstruction could cover that conduct.

Ultimately, § 1623 is focused on material false declarations under oath in judicial contexts; § 1512(c)(2) targets corrupt evidence-impairment to obstruct official proceedings. That means that to secure a (c)(2) conviction, the government will have to prove that the false statements were made with corrupt intent to obstruct an official proceeding. See Burge, 711 F.3d at 810 ("False statements made during an official proceeding may be obstructive. But so too

can misconduct that occurs in advance of the proceeding as long as the defendant believes that his acts will be likely to affect a pending or foreseeable proceeding." (cleaned up)); id. at 812 n.4 ("There is no materiality requirement for obstruction under § 1512(c); the defendant must have only acted with corrupt intent to obstruct."). But the fact that the government may need to prove "something more" than an act of perjury to secure a conviction for obstruction of justice, does not mean that the indictment fails to state an offense. United States v. Rankin, 870 F.2d 109, 112 (3d Cir. 1989).

Finally, to the extent that defendant is arguing that the indictment needed to expressly allege that his statements "created . . . evidence for use in an official proceeding," the court disagrees. An indictment "need not spell out each element as long as each element is present in context." United States v. Khan, 937 F.3d 1042, 1049 (7th Cir. 2019) (cleaned up); see id. at 1049-50 ("the indictment 'need not specifically allege' every 'component part of the offense'" (citation omitted)); see also United States v. Weller, 40 F.4th 563, 566 (7th Cir. 2022) ("An indictment suffices when it notifies the defendant of the charge, which can be done without parroting the words of the statute—or, for inside-trading doctrine, parroting the language of the Supreme Court's decisions."). Indeed, "[a]n implicit allegation of an element of a crime is enough." Khan, 937 F.3d at 1049.

Here, there is an implicit allegation of the elements of the crime. The superseding indictment incorporates the allegations of Count One, where the government explains the background of the case, the matters that were material to defendant's deposition and the lawsuit, and the false statements. It further explains in Count Two that defendant's statements related to various topics. And it explains that by making false statements, defendant corruptly obstructed,

17

or attempted to obstruct, an official proceeding—the Tri-State lawsuit. That is enough for an indictment. See id. at 1050 (explaining that courts "review indictments 'on a practical basis and in their entirety,' not in a 'hypertechnical manner'" (citation omitted)). And notably, defendant has not meaningfully argued that if the court rejects its reading of (c)(2)—which it has done here—the language of the indictment is otherwise insufficient to state an offense.

In short, the court finds that after Fischer, defendant's own false statements can still be used to satisfy § 1512(c)(2) even if they do not affect another piece of evidence.

As for defendant's argument that the missing element cannot be cured because there is no evidence to support the charge, that argument fails because the court has found that there is nothing to cure. To the extent that defendant's argument could be construed as an attempt to assert that the false statements are not material because they had no impact on the Tri-State lawsuit, the court agrees with the government that any such assertion is a "sufficiency of the evidence argument"—not a failure to state an offense argument.

In the end, the court is mindful that "[b]ecause a court's 'use[ ] [of] its supervisory power to dismiss an indictment . . . directly encroaches upon the fundamental role of the grand jury,' dismissal is granted only in unusual circumstances." United States v. Firtash, 392 F. Supp. 3d 872, 882 (N.D. Ill. 2019) (quoting United States v. Ballestas, 795 F.3d 138, 148 (D.C. Cir. 2015) (quotation omitted)). Defendant has not shown that this is one of those unusual circumstances.

## CONCLUSION

For the above reasons, the court denies defendant's motion to dismiss Count Two of the superseding indictment for failure to state an offense under Fed. R. of Crim. P. 12(b)(3)(B)(v) [Doc. 39].

**ENTER:**

**Robert W. Gettleman
United States District Judge**

**DATE: August 27, 2025**